NO. 07-09-00114-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JUNE
9, 2010

 



 

BRANDON KEITH MILES, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 47TH DISTRICT COURT OF POTTER
COUNTY;

 

NO. 58,805-A; HONORABLE HAL MINER, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

 

Appellant, Brandon Keith Miles, was
convicted of robbery[1]
and sentenced to confinement in the Institutional Division of the Texas
Department of Criminal Justice (ID-TDCJ) for a period of five years and
assessed a fine of $1,500.  Appellant
appeals alleging that the evidence was legally and factually insufficient.  We affirm.

 

 

Factual and Procedural Background

            On
October 23, 2008, Ashley Harris and Patrick Ledford left their apartment at the
Huntington Pointe Apartments to get something to eat.  When they got to Ledford’s car, Harris had
the keys and was going to drive.  As
Harris opened the car door, a black male approached her with a salutation and
held out his hand as if to shake hands with her.  The assailant grabbed Harris and attempted to
pull her toward him.  Harris was able to
pull away and backed off from the assailant. 
Upon hearing and seeing what was happening, Ledford grabbed the
assailant by the arm and attempted to spin him around to face Ledford.  The assailant pulled his shirt up and put his
hand in the waist band of his pants stating, “All I want is your keys.  I need to go home.  I have a gun.”  Harris then threw the keys toward the
assailant, who picked them up off the ground and hurried off around one of the
buildings in the apartment complex. 
Harris and Ledford were both extremely frightened by the incident and,
upon gaining access to a phone, called 911.

            The
first officer to respond was Justin Castillo of the Amarillo Police
Department.  Castillo arrived on the
scene and obtained a description of the events and a partial description of the
assailant.  Both witnesses described the
assailant to be a black male, wearing a black “do-rag,” blue jersey-type
T-shirt, and blue jeans.  The victims
stated the assailant was between 6’ and 6’1” in height.  Each victim thought that they would be able
to recognize the assailant if they saw him again, however, Harris was less sure
of this than Ledford.  After taking down
the information from the victims and reporting the incident, Castillo spoke to
the apartment maintenance man, Armando Mondragon, who had arrived to change the
locks on the victims’ apartment.[2]  

            Castillo
quizzed Mondragon about knowing anyone within the apartment complex that might
fit the general description of the assailant. 
Mondragon advised that he had seen someone that might fit the description
on the other side of the apartment complex. 
Upon finding out the apartment where the possible suspect might be
found, Castillo went to apartment 1102. 
At apartment 1102, Castillo questioned appellant, Boris Wyatt, and
Mauricio Rubio.  None of the three
individuals were dressed in clothing consistent with what the victims had
described the assailant as wearing.  All
three denied any knowledge of or involvement in the robbery.  

            Castillo
then left the scene only to be called back a short time later.  Upon returning to the victims’ apartment,
Castillo learned that the car that the keys went to had been stolen.  The victims described hearing the alarm on
the car go off and seeing the car being driven out of the apartment’s parking
lot.  Neither victim saw the perpetrator
get in the vehicle.  Castillo reported
the car as stolen and left the scene. 
Later, at about 6:15 to 6:30 a.m., Castillo returned to the apartment
and advised the victims that the stolen car had been involved in a wreck near
Wichita Falls and that a suspect, Boris Wyatt, was in custody.

            Detective
Louis Sanchez of the Amarillo Police Department was assigned to the robbery
case on October 27, 2008.  Upon learning
about the wrecked car and capture of Boris Wyatt, Sanchez prepared a photo
lineup that included Wyatt’s picture. 
Both Harris and Ledford came to the police department headquarters and
viewed the photo lineup.  Neither was
able to pick anyone out of the lineup.  A
second lineup was prepared that same day and the victims were asked to come
back to the police station to view it. 
At the time Harris and Ledford were shown the lineup, they were not
allowed to speak with each other and each had their own individual copy of the
photo lineup to view.  Each picked out
appellant as the perpetrator of the robbery.   


            Prior
to trial, the record reflects that there was no motion filed that contested the
fairness or validity of the lineup procedure used by the police.  Likewise, during trial, appellant’s counsel
did not object to the introduction of the photo lineups that Harris and Ledford
viewed.  At trial, both victims
identified appellant as the perpetrator of the robbery.  Appellant’s trial counsel vigorously
cross-examined both victims regarding their ability to see the perpetrator and
what they had told the police on the night of the incident regarding their
ability to identify the perpetrator. 
Even so, Harris and Ledford were steadfast in their identification of
appellant.

            The
appellant’s defense was that the witnesses were simply mistaken in their
identification.  Appellant’s argument was
that, since it was Wyatt who was found in the wrecked car, it must have been
Wyatt who accosted the victims in the parking lot and took the keys.  The jury convicted appellant, thereby
impliedly rejecting his contention, and sentenced appellant to five years in
the ID-TDCJ and assessed a fine of $1,500. 
By four issues, appellant attacks the legal and factual sufficiency of
the evidence.  Disagreeing with
appellant, we find the evidence legally and factually sufficient and affirm the
judgment of the trial court.

Sufficiency of the Evidence

            Appellant
challenges both the legal and factual sufficiency of the evidence.  Therefore, we are required to conduct an
analysis of the legal sufficiency of the evidence first and then, only if we
find the evidence to be legally sufficient, do we analyze the factual
sufficiency of the evidence.  See Clewis v. State, 922 S.W.2d
126, 133 (Tex.Crim.App. 1996).

Standard of Review

Legal Sufficiency

In assessing the legal sufficiency of
the evidence, we review all the evidence in the light most favorable to the
verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). 
In conducting a legal sufficiency review, an appellate court may not sit
as a thirteenth juror, but rather must uphold the jury’s verdict unless it is
irrational or unsupported by more than a mere modicum of evidence.  Moreno v. State, 755
S.W.2d 866, 867 (Tex.Crim.App. 1988).  We measure the legal sufficiency of the
evidence against a hypothetically correct jury charge.  See Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997).

 

Factual Sufficiency

            When
an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the
evidence in a neutral light, the jury was rationally justified in finding the
appellant guilty beyond a reasonable doubt. 
See Watson v. State, 204 S.W.3d 404,
415 (Tex.Crim.App. 2006).  In performing a factual sufficiency review,
we must give deference to the fact finder’s determinations if supported by
evidence and may not order a new trial simply because we may disagree with the
verdict.  See id. at 417.  As an
appellate court, we are not justified in ordering a new trial unless there is
some objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the jury’s verdict.  See id.  Additionally, an appellate opinion addressing
factual sufficiency must include a discussion of the most important evidence
that appellant claims undermines the jury’s
verdict.  Sims v.
State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).  The Texas Court of Criminal Appeals has
recently declared that, when reviewing the evidence for factual sufficiency,
the reviewing court should measure the evidence in a neutral manner against a
“hypothetically correct jury charge.”  Vega
v. State, 267 S.W.3d 912, 915 (Tex.Crim.App.
2008) (citing Wooley v. State, 273
S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Analysis

            To
sustain a conviction for the offense of robbery, the State had to prove beyond
a reasonable doubt that 1) appellant, 2) on or about the 26th day of
October, 2008, 3) while in the course of committing theft of property, and with
intent to obtain and maintain control of said property, 4) intentionally or
knowingly, 5) threatened or placed Ashley Renee Harris in fear of imminent
bodily injury or death.  As stated above,
the only contested issue at trial was the identity of appellant as the
perpetrator of the crime.  The record
establishes all of the other elements of the offense without any objection or
challenge by appellant.  

            In
addressing the issue of identity, appellant contends that the victims’
testimony was not reliable because neither one gave a detailed description of
the assailant at the scene, Harris had stated that the assailant was wearing a
blue jersey-type T-shirt, while at trial she said it was a red jersey-type
T-shirt; and both witnesses said they did not get a good look at the assailant
because the event happened so fast. 
Additionally, appellant seems to be contending that the identification
during trial was not reliable.

            Prior
to addressing appellant’s issue on the legal sufficiency of the evidence, the
question of reliability of the in-court identification should be
considered.  As noted in the factual and
procedural background portion of this opinion, appellant never challenged the
in-court identification of appellant by the witnesses by way of a pretrial
motion or an objection.  Therefore, to
the extent that appellant may be attempting to now challenge the in-court
identification based upon some alleged taint in the photo lineup, that issue
was waived by appellant’s inaction before and during trial.  See Tex.
R. App. P. 33.1(a)(1).  

Legal Sufficiency

            The
testimony at trial established that both witnesses identified appellant in a
photo lineup within a few days of the robbery. 
At trial, both witnesses again identified appellant as the perpetrator
of the crime.  Appellant’s trial counsel
conducted a very thorough cross-examination of both witnesses.  During the cross-examination, trial counsel
pointed out some inconsistencies between the witnesses’ trial testimony and
what they told the initial officer on the scene.  At the end of the day, each witness was solid
in their identification of appellant, both in the photo lineup and at
trial.  In this case, there are two
eyewitnesses, whereas we are instructed that the testimony of a single
eyewitness is sufficient to support the conviction of an accused.  See Aguilar v. State, 468
S.W.2d 75, 77 (Tex.Crim.App. 1971); Walker v.
State, 180 S.W.3d 829, 832 (Tex.App.—Houston [14th
Dist.] 2005, no pet.).

            When
applying the standard of reviewing the evidence in the light most favorable to
the jury’s verdict, we cannot say that this jury acted irrationally when it found
appellant guilty beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. 
Accordingly, we overrule appellant’s contention that the evidence was
legally insufficient.

Factual Sufficiency

            In
reviewing the record for the factual sufficiency of the evidence, we do so
without the prism of “in the light most favorable to the jury’s verdict.”  Watson, 204 S.W.3d
at 415.  Appellant contends that,
based upon the cross-examination of the identity witnesses, the identification
was unreliable.  This is so for a number
of reasons.  First, the officer’s identification
of the jersey the assailant wore as blue differed from Harris’s trial testimony
that it was red.  Second, each witness
told the officer they were not sure if they could identify the assailant and
that they did not get a good look at the assailant.  Finally, Wyatt, who was around the scene of
the robbery with appellant, was later found in possession of the car stolen
from Ledford by using the keys that the assailant had previously obtained.  See Sims, 99
S.W.3d at 603 (requiring a reviewing court to address the most important
evidence that appellant contends undermines the confidence of the court in the
jury’s verdict.)  Appellant’s
analysis totally ignores the fact that both witnesses viewed a photo lineup
with Wyatt’s picture in it and neither of them identified Wyatt as having been
the perpetrator of the robbery.  In fact,
upon viewing a subsequent photo lineup containing appellant’s picture, each
witness quickly identified appellant as the assailant.  The factual sufficiency of the evidence as to
identification simply boils down to the jury’s reconciling some conflicting testimony.  It is the jury’s job to reconcile the
conflicts in the testimony.  See Johnson
v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.
2000).  Further, the weight to be given
the evidence is also within the province of the jury.  Id. 
Finally, as stated in the legal sufficiency portion of this opinion, the
testimony of a single eyewitness is sufficient to convict a defendant.  Aguilar, 468 S.W.2d
at 77; Walker, 180 S.W.3d at 832. 


            Therefore,
we cannot say that the jury acted irrationally in finding appellant guilty
beyond a reasonable doubt nor can we say that the great weight and
preponderance of the evidence contradicts the jury’s verdict.  Watson, 204 S.W.3d
at 415.  Accordingly, we overrule
appellant’s issues regarding the factual sufficiency of the evidence.  

 

 

Conclusion

            Having
overruled appellant’s issues, we affirm the judgment of the trial court.

 

                                                                                                                                                                                                                                                            Mackey
K. Hancock

                                                                                                            Justice

 

Do not publish.  

 

 

 

 

 

            








 











[1]
See
Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003).





[2]
The lock change was required because the
apartment key was on the same key ring with the car keys.








ellE>Tex.Crim.App.
2006).  The trial court could have,
therefore, reasonably concluded that the probative value of Hamilton’s
statement on the video recording was not substantially outweighed by the danger
of unfair prejudice.  We find the trial
court did not abuse its discretion by admitting the evidence over appellants’
Rule 403 objection.  We overrule
appellants’ fourth issue. 

Failure to Instruct on Lesser Included Offense

            By their fifth issue,
appellants contend the trial court erred by failing to instruct the jury on the
lesser-included offense of criminal trespass of a habitation.

An offense is a
lesser included offense if:


(1) it is established by proof of the same or less
than all the facts required to establish the commission of the offense charged;


(2) it differs from the offense charged only in the
respect that a less serious injury or risk of injury to the same person,
property, or public interest suffices to establish its commission;


(3) it differs from the offense charged only in the
respect that a less culpable mental state suffices to establish its commission;
or


(4) it consists of an attempt to commit the offense
charged or an otherwise included offense.

 

Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). 

            To determine if a
defendant is entitled to a lesser included offense instruction, a two-pronged
test applies: (1) the lesser-included offense must be included within the proof
necessary to establish the offense charged, and (2) the record must contain
some evidence that if the defendant is guilty, he is guilty only of the
lesser-included offense.  See Rousseau
v. State, 855 S.W.2d 666, 672 (Tex.Crim.App.
1993).  The first prong of the Rousseau
test is a question of law, wholly independent of the evidence adduced at
trial.  Hall v.
State, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007).  In analyzing the second prong, we review all
the evidence admitted at trial.  Enriquez v. State, 21 S.W.3d 277, 278 (Tex.Crim.App.
2000).  If more than a scintilla
of evidence from any source raises the issue that the defendant is guilty only
of the lesser-included offense, the instruction is proper on request.  Forest v. State, 989
S.W.2d 365, 367 (Tex.Crim.App. 1999).  “Credibility of the evidence and whether it
conflicts with other evidence is not to be considered when determining whether
the jury should have been charged with a lesser-included offense.”  Paz v. State, 44
S.W.3d 98, 100 (Tex.Crim.App. 2001). 

            Here, appellants were
charged with burglary pursuant to Texas Penal Code § 30.02(a)(3)
which specifies a person commits an offense if, without the effective consent
of the owner, the person “enters a building or habitation and commits or
attempts to commit a felony, theft, or an assault.”  Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003).  A
person commits criminal trespass if he enters or remains on or in property of
another without effective consent and had notice that the entry was forbidden
or received notice to depart but failed to do so.  See Tex. Penal Code Ann. § 30.05(a)
(Vernon Supp. 2009).

            The offense of criminal
trespass can be a lesser included offense of burglary.  Phillips
v. State, 178 S.W.3d 78, 82 (Tex.App.--Houston
[1st Dist.] 2005 pet. refused).  For our
disposition of appellant’s argument, we assume the first prong of the Rousseau analysis is satisfied.  But under the second prong the evidence must
raise an issue that the defendant, if guilty, is guilty only of the lesser
offense of criminal trespass of a habitation. 
See Pickens v. State, 165 S.W.3d 675, 679 (Tex.Crim.App.
2005); Aguilar, 682 S.W.2d at 558.

            Graves testified she was
dressing in her apartment when the door broke open. Scroggs
stood in the doorway as Gariepy walked across the
living room.  She pushed Graves onto the
bed, pulled her hair, and slapped her. 
According to Gariepy, she went to the door of
Graves’ apartment and repeatedly knocked but Graves did not answer.  Gariepy then
instructed Scroggs to force open the door.  According to his statement, Scroggs did so with sufficient force to break the chain
lock and the two entered.  Gariepy argued with Graves and pushed her onto the
bed.  Gariepy
repeatedly struck Graves on the face.  On
this record, no rational juror could find that if appellants were guilty, they
were guilty only of criminal trespass. 

            The trial court did not
err by denying appellants’ request for an instruction on criminal trespass of a
habitation.  We overrule appellants’
fifth issue.

Double Jeopardy Violation

We find record indication of unassigned error which we
address on our own motion.  From the face
of the record it appears appellants’ convictions for burglary of a habitation
violate the Double Jeopardy Clause of the Fifth Amendment of the United States
Constitution.[10]  “Appellate courts have the jurisdiction and
authority to review unassigned error.  In
the case of a double-jeopardy violation, the issue may be addressed as an
unassigned error when the violation is apparent from the face of the record.”  Bigon v. State, 252 S.W.3d 360, 369 (Tex.Crim.App. 2008) (citations omitted).[11]  

The indictments allege two counts of burglary of a
habitation by appellants.  Tex. Penal
Code Ann. § 30.02(a)(3) (Vernon 2003).  According to count two, appellants “intentionally
or knowingly entered[ed] a
habitation, without the effective consent of Monique Graves, the owner thereof,
and attempted to commit or committed an assault against Monique Graves.”  Count three alleged appellants “intentionally
or knowingly enter[ed] a
habitation, without the effective consent of Monique Graves, the owner thereof,
and attempted to commit or committed the felony offense of aggravated
kidnapping or kidnapping.”  It is
undisputed that the charged burglaries sprang from a single unlawful entry by
appellants of Graves’ apartment. 

The Double Jeopardy Clause of the Fifth Amendment
consists of three separate protections: (1) it protects against a second
prosecution for the same offense after acquittal; (2) it protects against a
second prosecution for the same offense after conviction; and (3) it protects
against multiple punishments.  North Carolina v. Pearce,
395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.E.2d 656 (1969).  Here we are concerned with the third
protection, that from multiple punishments.

“A defendant suffers multiple punishments in violation
of the Double Jeopardy Clause when he is convicted of more offenses than the
legislature intended.”  Ervin v. State, 991 S.W.2d 804, 807 (Tex.Crim.App. 1999) (citing
Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668,
84 L.Ed.2d 740 (1985)).  “The legislature
. . . determines whether offenses are the same for double-jeopardy purposes by
defining the ‘allowable unit of prosecution.’”  Ex parte
Cavazos, 203 S.W.3d at 336 (quoting Sanabria v. United States, 437 U.S. 54, 69, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)).  “The legislature also decides whether a
particular course of conduct involves one or more distinct offenses under a
given statute.”  Ex parte Cavazos, 203 S.W.3d at 336.  Thus it is the allowable unit of prosecution
that determines the scope of double jeopardy’s protection from multiple
punishments under the burglary statute.  Id. 


The gravamen of a burglary is an unauthorized entry with
the requisite mental state.  Ex parte Cavazos, 203 S.W.3d at 337.[12]
 The harm of burglary results from the unauthorized
entry.  Id.  The offense is complete from
entry.  Id.  Because burglary is a
crime against property and not a person, the allowable unit of prosecution for
a burglary is the unlawful entry.  Id. 
On the face of this record, we find appellants were punished twice for a
single unlawful entry.

On finding a double-jeopardy violation, we retain the
conviction with the “most serious punishment,” and vacate any remaining
convictions that are the “same” for double jeopardy purposes.  Landers
v. State, 957 S.W.2d 558, 560 (Tex.Crim.App.
1997) overruled on other grounds, Ex
parte Cavazos, 203 S.W.3d at 338.  See Bigon, 252
S.W.3d at 372-73 (discussing Landers).  The most serious offense is the offense for
which the greatest sentence was assessed. 
Ex parte Cavazos, 203 S.W.3d
at 338 (overruling Landers to the
extent it allowed consideration of other factors such as the degree of the
felony, range of punishment, and rules governing parole eligibility and
awarding good-conduct time).  But here,
appellants received identical sentences for their two burglary
convictions.  We, therefore, break the
apparent tie, by affirming the offense first named in the verdict form;
burglary predicated on assault.  See Ex parte Cavazos, 203 S.W.3d at 339
n.8 (court noted some of its cases may have suggested this as a tie breaker but
did not address the question).  We vacate
the judgments convicting appellants of burglary of a habitation predicated on
commission of aggravated kidnapping.

 

 

Sentencing Error

            In their sixth issue,
appellants claim various errors in the judgments of the trial court.  Appellants’ complaint of sentencing error for
their convictions under count three is rendered moot by our finding of a double
jeopardy violation.

            Appellants assert the
trial court abused its discretion by imposing cumulative sentencing, not
adjusting the classification of aggravated kidnapping downward to a second
degree felony on the jury’s finding that Graves was voluntarily released at a
safe place, and not probating the fines for counts two and three as assessed in
the verdicts of the jury.

            For each appellant, the
first page of each judgment states, “This sentence shall run consecutive to the
case below.”  We interpret this means on
completion of the sentence imposed for count one,
appellants begin service of the sentence imposed under count two.  

            It is not disputed that
the offenses for which appellants were indicted and convicted arose from the
same criminal episode.  See Tex.
Penal Code Ann. § 3.01 (Vernon 2003). 
Subject to exceptions not applicable here, Penal Code § 3.03(a) requires
concurrent sentencing when an accused is found guilty of more than one offense
arising from the same criminal episode and prosecuted in a single criminal
action.  Tex. Penal
Code Ann. § 3.03(a) (Vernon Supp. 2009). 
The trial court’s imposition of consecutive sentences runs afoul of the
statutory requirement, and constitutes an abuse of its discretion.   

            The judgments under
count one, for aggravated kidnapping, classify the offense a first degree
felony.  While this classification is
generally correct, the Penal Code, however, provides an exception.  Tex. Penal Code Ann. §
20.04(c) (Vernon 2003).  Section
20.04(d) classifies aggravated kidnapping a second degree felony if the
defendant proves he voluntarily released the victim in a safe place.  Tex. Penal Code Ann. §
20.04(d) (Vernon 2003).  The jury
found appellants voluntarily released Graves in a safe place.  Accordingly, the judgments as to count one
should have classified the offense a second degree felony.

            In its verdicts on
punishment, the jury assessed fines of $5,000 for counts two and three but
recommended probation of each.  The
judgments, however, order payment of a fine of $5,000 on counts two and
three.  We will reform the judgments of
count two to conform to the verdicts of the jury.  Because the court included the fines in its
calculation of payments ordered by the judgments on count two and because we
vacate the judgments under count three, we remand in part with instructions for
the trial court to recalculate the total amount owed and monthly installment
due of each appellant.

Equal Protection Claim

            In their seventh issue,
appellants argue they were denied equal protection of the law under the
Constitutions of the United States and Texas. 
Their complaint is the trial court denied their defenses of immunity,
defense of third person, and necessity because Graves’ child was not, at the
time of the events giving rise to the indictment, yet born alive.  They imply one protecting a child born alive
from ingestion of Oxycontin would be entitled to
immunity and justification defenses.  

            We have discussed why
the trial court did not err by denying appellants’ motions for directed verdict
and refusing jury submission of their proposed instructions on immunity and
justification defenses.  Because the trial
court did not abuse its discretion in denying appellants’ motions and requests
on non-constitutional grounds, it is not necessary to review their
constitutional argument.  Cf. Turner
v. State, 754 S.W.2d 668, 675 (Tex.Crim.App.
1988) (courts do not address the constitutionality of a statute unless
consideration is essential to decision). 
A decision of issue seven is unnecessary to our disposition of the
appeal.  Tex. R. App. P. 47.1.

Conclusion

            We render judgment
vacating the judgments of the trial court on count three of the indictments,
burglary of a habitation predicated on aggravated kidnapping.  

The remaining judgments of the trial court are modified
to provide the sentences assessed against appellants under each judgment shall
run concurrently; the classification of offense under count one is a second
degree felony; and the fines of $5,000 for count two are probated.  

Both cases on appeal are remanded in part with
instructions to the trial court to recalculate the amounts owed and monthly
installment payments due of each appellant in light of our vacation of the
judgments under count three and the probation of fines assessed for count
two.  Otherwise, and as modified, we
affirm the judgments of the trial court. 

 

 

                                                            

                                                            James T. Campbell

              
                                                     Justice

 

 

Publish.    

 

 

 











[1]
Tex. Penal Code Ann. § 20.04(b) (Vernon 2003).





[2]
Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003)
(attempt or commission of assault and a felony (kidnapping)).

 





[3]
See Tex. Penal Code Ann. § 30.02(a)(3) (Vernon
2003).  A person commits assault if the person inter alia “intentionally, knowingly,
or recklessly causes bodily injury to another, including the person’s
spouse.”  See Tex. Penal Code Ann.
§ 22.01(a)(1) (Vernon Supp. 2009).





[4]  Because of our
disposition of this appeal, discussion of the legal and factual sufficiency of
the evidence supporting appellants’ convictions under count three of the
indictment, burglary predicated on a felony (aggravated kidnapping), is
unnecessary.  See Tex. R. App. P. 47.1.

 





[5]  Appellants
filed a pre-trial motion to dismiss which was denied.  They re-urged this motion at trial in the
course of making an oral motion for instructed verdict.  The basis of their argument is the evidence
was conclusive that under Family Code § 261.106 they were immune from criminal
prosecution for the conduct giving rise to the indicted offenses.  Tex. Fam. Code Ann. §
261.106 (Vernon 2008).  





[6]
In relevant part this section provides:

 

A person acting in
good faith who reports or assists in the investigation of a report of alleged
child abuse or neglect or who testifies or otherwise participates in a judicial
proceeding arising from a report, petition, or investigation of alleged child
abuse or neglect is immune from civil or criminal liability that might
otherwise be incurred or imposed.

 

Tex. Fam. Code Ann. § 261.106(a) (Vernon 2008).





[7]
The State argues the “child abuse or neglect”
referred to in Family Code Chapter 261 does not refer to unborn children so §
261.106 has no application in this case.  We do not reach the State’s argument.  

 





[8] Courts interpret a statute in accordance with the
plain meaning of its words unless they are ambiguous or the plain meaning leads
to absurd results.  Mosley
v. State, 983 S.W.2d 249, 256 (Tex.Crim.App.
1998).  





[9]  See State v. Harrod,
81 S.W.3d 904 (Tex.App.—Dallas 2002, pet. refused)
(finding limits to statute’s grant of immunity). 





[10]  No person
shall “be subject for the same offense to be twice put in jeopardy of life or
limb.”  U.S. Const., Amdt.
5.





 

[11]  In Bigon, as here, there was no double-jeopardy
objection at trial and on the issue error was not assigned in the court of
appeals.  Bigon, 252, S.W.3d at 369.  Cf.
Gonzalez v. State, 8 S.W.3d 640, 643 (Tex.Crim.App.
2000) (double jeopardy claim may be raised for first time on appeal if
undisputed facts show double jeopardy violation clearly apparent on face of
record and enforcement of usual rules of procedural default would serve no
legitimate state interest).  





[12]  Appellants
were indicted under Penal Code § 30.02(a)(3) which dispenses with the intent requirement of § (a)(1) and allows the State to prove after unlawful
entry the defendant actually committed or attempted to commit a felony, theft,
or assault.  Tex. Penal Code Ann. §
30.02(a)(3) (Vernon 2003).  See DeVaughn v. State, 749 S.W.3d 62, 65 (Tex.Crim.App. 1988) (gravamen of burglary is unlawful entry
accompanied by requisite mental state, § 30.02(a)(1)
& (2), or requisite acts or omissions under § 30.02(a)(3)).